### THE COMMONWEALTH OF MASSACHUSETTS *vs.* FREDERICK JOHNSON.

The surety in a recognizance in a criminal case, after a forfeiture of the recogni zance by a default of the principal and surety entered of record, has no right to surrender the principal in order to exonerate himself from liability, or, consequently, to arrest and detain the principal for that purpose.

A promissory note, the consideration of which is the discharge of the principal in a criminal recognizance from an arrest by his surety, after a forfeiture of the recognizance by default, is void.

THIS was an action by the commonwealth, as the indorsee, against the defendant, as the maker, of a promissory note for $200, dated July 22d, 1846, payable to William E. God-dard, or order, on demand, and by him indorsed and deliv-ered to the commonwealth's attorney for the county of Suffolk. The case was tried before *Wells,* C. J., in the court of common pleas.

At the trial, the following facts were in evidence or ad-mitted : —

On the 6th of December, 1845, Goddard entered into a recognizance *in the usual form* in the supreme judicial court, as the bail and surety of one Charles J. Hadley, who, having been convicted of a misdemeanor in the municipal court, on an indictment there pending against him, had carried the case before the supreme judicial court by exceptions. The excep-tions were overruled, and, on the 8th of July, 1846, Hadley and Goddard were both called on their recognizance, and, not appearing, were defaulted ; and, on the 10th of the same July, the court adjourned without day.

On the 20th of July, the commonwealth's attorney for the county of Suffolk commenced an action of debt on the recog-nizance, against Goddard, in the municipal court. Goddard thereupon immediately made search for Hadley, and found him at Martha's Vineyard ; and, being accompanied by one Haskell, who had then recently been a constable of Boston, they required Hadley to return with them to Boston to be surrendered in court. Hadley made no objection or resist-ance, and, on the 22d of July, 1846, they all came together to Boston. Arriving in the evening, when the courts are usually shut, Goddard was proceeding to the jail with Had-ley, for the purpose of keeping him there until the next morning, in order to his being surrendered in court. Hadley, being reluctant to go to jail, applied to the defendant, John-son, to be security for him, or to relieve him in some way.

In order to effect this object, Johnson made and signed the note on which this action was brought, and delivered the same to Goddard, who thereupon permitted Hadley to go at large. There was no other consideration for the note than what grew out of these transactions.

Goddard, on the same day, carried the note to the attorney of the commonwealth for the county of Suffolk, and indorsed the same to the commonwealth, and left the note with the attorney. An arrangement was entered into, at the same time, between Goddard and the commonwealth's attorney and the attorney for Hadley, by which it was agreed, that the action on the recognizance against Goddard should be continued until the November term, 1846, of the municipal court; that Hadley should appear before the supreme judicial court to receive his sentence; that the action upon the recognizance should then be discontinued on payment of the costs; that when Hadley had been sentenced and the costs paid, the note now in suit of Frederick Johnson should be given up; and that if Hadley should not appear to receive his sentence, the note should be collected. This arrangement was made without the knowledge or consent of Johnson.

At the next December term of the municipal court, namely, on the 3d of December, 1846, Goddard was defaulted in the action against him upon his recognizance, and thereupon applied to the court for a remission of the whole or a part of the penalty.

After the commencement of the November term, 1846, of the supreme judicial court, for this county, namely, on the 22d of December, 1846, Hadley not having then appeared therein for sentence, the commonwealth's attorney commenced the present action, having retained in his possession the note on which the same was brought ever since its delivery and indorsement as above stated. Subsequently to the commencement of this action, namely, on the 12th of May, 1847, Hadley was brought before the supreme judicial court, on a writ of *capias,* and was then sentenced for the offence of which he had been convicted in the municipal court.

The defendant, upon the facts thus in evidence, contended, that Goddard, as the bail and surety of Hadley in a criminal proceeding, had no right to arrest or imprison Hadley or to surrender him, in order to exonerate himself from his liability as surety; that the right of bail, to surrender the principal, at any time before final judgment in a suit against the bail, was given by law only in civil cases; that Hadley could not have been legally detained in jail if he had been committed there by Goddard; that the note given by the defendant to relieve Hadley from commitment to jail by Goddard was consequently for an illegal or no consideration; and that the same, being payable on demand, was void in the hands of an indorsee.

It was contended, on the other hand, for the plaintiffs, that the bail in criminal cases had the custody of the principal, as much as the bail in civil suits; that such had been the constant and universal practice in this commonwealth; that while the principal was liable to be sentenced, the bail was responsible for him; and that in consequence of that responsibility and coëxtensive with it, the bail had the custody of the principal, and a right to arrest and surrender him.

The presiding judge ruled, that, in a criminal prosecution, the bail had no right, as in a civil suit, to surrender the principal, and thereby exonerate himself from his liability, after the default of the principal and surety had been entered, and the court adjourned without day, and after an action of debt on the recognizance had been commenced before final judgment; that there was no purpose recognized by law, which would authorize bail under such circumstances to make any disposition of the person of the principal, if he had been in custody; that it was not a matter of right, but a matter of clemency, depending upon the circumstances, should the court receive a surrender in such a case; and that upon the facts in evidence, or admitted, in this case, on the part of the plaintiffs, the defendant was entitled to a verdict. The jury rendered a verdict accordingly, and the plaintiffs alleged exceptions.

*S. D. Parker,* (county attorney,) for the plaintiff.

*B. F. Hallett,* for the defendant.

FLETCHER, J. This was an action of assumpsit on a promissory note made by the defendant, dated July 22d, 1846, for $200, payable to William E. Goddard, or order, on demand, and by him indorsed and delivered to the commonwealth's attorney for the county of Suffolk. The suit was originally brought in the court of common pleas, and comes to this court by exceptions.

[Here the judge repeated the facts as already stated on pages 455 and 456.]

Upon the trial of this action in the court of common pleas, it was maintained, on the part of the defendant, that Goddard, as the surety of Hadley, in a criminal matter, had no right, under the circumstances of this case, to surrender Hadley in order to exonerate himself as surety, and could not therefore arrest or imprison him for that purpose; and that as the release of Hadley by Goddard, when he had no right to retain him in his custody, formed the consideration of the note, the note was without consideration and void, and could not be enforced against the defendant.

In reference to this defence, the court below ruled as follows: [Here the judge stated the ruling of the court of common pleas, as above mentioned on page 457.] To this ruling the plaintiff excepts. But in the opinion of this court the ruling was perfectly correct and unexceptionable.

What may be the rights of a surety in a recognizance in a criminal prosecution, in regard to the custody of the principal, for the purpose of having him in court according to the tenor of the recognizance, so as to prevent a forfeiture, and thus save the surety from liability, the court is not called on in this case to consider. No opinion on that point therefore is expressed.

. In the present case, before the principal took the surety into custody, the former had avoided and failed to comply with his recognizance, and both principal and surety had been defaulted and the recognizance forfeited of record. It

was then manifestly too late for the surety to save his liability by a surrender of the principal. The time for the surrender was past; the record of the forfeiture of the recognizance was made up; and the consequent liability of the surety was fixed. At this stage of the proceedings, there is no provision of law, by which the surety, as a matter of right, can discharge himself from liability by a surrender of the principal, though the court may have power to receive a surrender, and to remit the penalty in whole or in part; but that is wholly a matter of discretion, and recognizes no right to make a surrender after a forfeiture.

In civil suits, the principal may be surrendered at any time before final judgment against the bail. The statute provides very particularly as to the time and place and manner of the surrender of the principal in civil suits; but its provisions are confined to civil suits, and do not extend to criminal prosecutions. The only legal purpose known to the law, for which the bail may take the principal into custody, is to surrender him, and thus discharge himself from liability as bail. When, therefore, there is no legal right to surrender the principal, there is no legal purpose for which the bail can take and keep him in custody.*

It was contended by the counsel for the commonwealth, that the bail had a right to take the principal, so long as the bail could be benefited by so doing. There is certainly no such principle as this recognized any where in the law; and it would be a very dangerous one, particularly if the bail was allowed to judge, whether or not he would be benefited by taking the principal. The bail might arrest under an expectation that he would be benefited, but be disappointed in the result. Is the principal to be made the subject of these experiments, on the part of the bail? How long shall the principal be kept in custody, in order to have the question solved,

---

* It is now provided, by the act of 1851, *c.* 92, § 1, that "The bail in criminal cases, at any time before default, may exonerate themselves from further liability, by surrendering their principal to the jailer of the county where the offence of such principal was committed or is punishable.'

whether or not his confinement will be beneficial to the bail, and at length be discharged on the ground that his arrest and imprisonment were of no use? In the present case, if Goddard had committed Hadley to jail, as he was about to do, how long might he have kept him there? There was no legal purpose, which could be accomplished by his arrest and imprisonment. If he could be kept in prison one night, why not for an indefinite period?

In short, the only purpose known to the law, for which the bail may take the principal, is to surrender him in discharge of himself. There can, therefore, be no right to take the principal, when there is no right to surrender him. Goddard, in the present case, had no right to hold Hadley in custody, and his releasing him formed no consideration for the note in suit; and the note could not have been enforced by Goddard against this defendant. It being a note on demand, the indorsee has no better right than the payee.

*Exceptions overruled.*